## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EDUARDO FLORES BARAJAS & JUAN MENDOZA on behalf of themselves and all other similarly situated individuals, | : : : : : | |
| Plaintiffs, | : : | Docket No. |
| v. | : : | |
| SWIFT & COMPANY, INC. & JBS SWIFT & COMPANY & JBS S.A. Defendants. | : : : : : : | **JURY TRIAL DEMANDED** |

## <u>ORIGINAL COLLECTIVE ACTION COMPLAINT</u>

Plaintiffs, by and through their undersigned counsel, on behalf of themselves and other similarly situated individuals formerly employed by Defendant, Swift & Company., Inc., at its former meat processing facility in Nampa,, ID.  On or about July 12, 2007, JBS, S.A., completed the acquisition of Swift & Company and formed JBS Swift & Company (all named Defendants are hereinafter collectively referred to as "Swift"). Swift alleges, upon information and belief, except as to the allegations that pertain to the named Plaintiffs and their counsel, which are based upon personal knowledge, as follows:

I.    **INTRODUCTION**

1.    The named Plaintiffs bring a Collective action against Swift under federal law pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., on behalf of themselves and all other similarly situated former production and support employees of Swifts' meat processing facility in Nampa, Idaho for unpaid wages and unpaid overtime wages, liquidated damages, costs and attorneys' fees.

2.    At all times relevant to this Complaint until the plant closed in or around August 2005, Plaintiffs worked at Swifts' meat processing facility located in Nampa, Idaho.

3.    During the relevant time period in this case, Swift had failed to pay Plaintiffs their minimum hourly rate of pay for all hours of work they performed in addition to overtime as required by federal law.  The uncompensated time includes, but is not limited to, time spent preparing, donning, doffing, obtaining and sanitizing sanitary and safety equipment and clothing, obtaining tools, equipment and supplies necessary for the performance of their work, "working" steels and all other activities in connection with these job functions, and walking between work sites after the first compensable work activity and before the last compensable work activity.  These unpaid work activities took place before and after paid time, and during both paid breaks and unpaid lunch breaks.

4.    At all times relevant to this Complaint, upon information and belief, Swift failed to pay its employees at its Nampa, Idaho meat processing facility for time spent donning and doffing personal protective equipment (hereinafter "PPE"), walking time (after the continuous work days first primary work activity (i.e., the commencement of donning PPE at the beginning of any given shift), time spent sharpening knives, time spent waiting to sharpen knives, time spent waiting for fresh PPE, and time spent sanitizing

persons and PPE during the continuous work day., despite the fact that Plaintiffs spent thirty (30) minutes or more per day performing uncompensated work activities as described in this Complaint.


**II.      JURISDICTION AND VENUE**

5.      This Court has jurisdiction over Plaintiffs' federal claims because they are brought pursuant to the Fair Labor Standards Act, 29 U.S.C. 216 (b), and because they raise a federal question pursuant to 28 U.S.C. § 1331.

6.      Venue is proper in this federal judicial district pursuant to 28 U.S.C. 1391(a) and (c), because a substantial part of the events or omissions giving rise to these claims occurred within this judicial district, and because Defendant Swift resides in this judicial district in that it regularly conducts business within this judicial district and thus is subject to personal jurisdiction within this judicial district.

**III.      PARTIES**

7.      The named Plaintiffs, Eduardo Flores Barajas and Juan Mendoza,  are respectively, residents of Nampa and Caldwell, Idaho.  The named Plaintiffs assert federal claims under the Fair Labor Standards Act as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other similarly situated former employees who worked at Swift's meat processing facility located in Nampa, Idaho which was closed in August of 2005.

8.      Defendants Swift & Co, Inc., JBS Swift & Co are Delaware corporations with a principal place of business in Greeley, Colorado.  Defendant, JBS, S.A., is a Brazilian corporation, headquartered in Sao Paolo, Brazil, which operates meat production

facilities throughout the world.  Upon information and belief defendants, JBS Swift & Co., and JBS, S.A., acceded to all liabilities of Swift & Company, Inc.  All defendants are corporations engaged in interstate commerce and in the production of goods for commerce throughout the United States.  JBS can be served with original service of process at its world head quarters in Sao Paolo, Brazil.  Swift & Company, Inc., and JBS-Swift,  can be served with original service of process at their corporate headquarters, located at 1770 Promontory Circle, Greeley, CO 80634.

**V.    COLLECTIVE ACTION ALLEGATIONS**

9.    Swift owned and operated a meat processing facility in Nampa, Idaho which was closed in or about August, 2005.  The complained of unlawful compensation system at issue in this Complaint has affected Defendant Swift's former production and support employees uniformly at this location.  At all times relevant to this Complaint, Defendant Swift has utilized the same compensation system complained about herein.

10.    Under Swift's wage compensation system, Plaintiffs and others similarly situated who are production employees are paid only during the time that they are present on the actual production assembly line under a system known as "gang time" or "line time."  Defendant Swift, as a matter of policy and practice, did not pay its employees for all required pre-production line and post-production line activities that are necessary and integral to their overall employment responsibilities, such as: donning and doffing clothing and protective equipment, cleaning and sanitizing that equipment, walking to their lockers and/or production line after already performing compensable activities, and at the end of the work day, walking to the wash stations and then to their lockers and/or supply rooms before the end of compensable time, working on knife maintenance

4

equipment known as "steels" or "mousetraps", and waiting in line to receive required knives, supplies, tools and equipment needed for production line activities. Defendant Swift also required its employees to be present at the production line for periods after their "gang time" (i.e. the time when they stop getting paid) but they are not paid for that time.

11.     Pursuant to federal regulations and Defendant Swift's own internal policies and procedures, Plaintiffs and Class members were required to wear uniforms and special personal protective equipment ("PPE") for protection and sanitary reasons. Uniforms included shirts, pants and boots. PPE includes, *inter alia*, mesh and plastic aprons, belly guards, wrist guards, mesh or plastic sleeves, sheaths, gloves, mesh gloves, cotton gloves, cut resistant plastic gloves, hardhats, scabbards, hairnets, earplugs, coveralls, eye protection, and other protective equipment and coverings. Most of Swift's employees used knives and other sharp instruments in the course of their work and the PPE was designed to protect them from injury and the consuming public from contamination by human bio hazards.

12.     As a consequence of the compensation system utilized by Swift, Plaintiffs and Class members were not fully paid at the beginning of each shift for the time it takes to don uniforms, obtain gear, maintain gear, walk from the supply rooms to their lockers and/or from their lockers to sanitation stations and then to production areas, and sanitize the required PPE, walk to production areas and don PPE.

13.     At the beginning of each work day, Plaintiffs and other workers similarly situated were required to report to their lockers to don their uniforms. Production employees were required to obtain their PPE, walk to storage areas and obtain knives and other gear,

work their steels and/or mousetraps, walk to the sanitation stations and sanitize their

persons, walk to the production lines and don the PPE <u>before</u> paid time begins.  Plaintiffs

were not paid for these work activities.

14.     Pursuant to Defendant Swift's compensation system, employees were not fully

compensated for time spent before or after paid time sharpening their knives, which is a

necessary task for the performance of their job.

15.     During their unpaid lunch and other paid or unpaid breaks, Plaintiffs and other

similarly situated workers had to remove their PPE, clean their PPE, and then re-don it at

the end of breaks.  These employees were not paid anything or were not fully paid for

performing these work activities.

16.     After the end of paid time, employees were required to finish their work on

production and other activities, walk to wash stations, wait in line to wash the PPE,

knives and other gear, wash their PPE, knives and PPE, wash their persons, walk to their

lockers, doff their uniforms and PPE and stow the uniforms, PPE, knives and other gear

in their lockers.

17.     According to Swift's compensation system, Plaintiffs and Class Members were

not paid during the time after "gang time" (when compensation stops) although they

continued to work on final production tasks and then walk to and wait at wash areas, doff

PPE, wash PPE and gear (as well as their own bodies), walk to lockers, doff uniforms

and stow gear and uniforms.

18.     As a result of Defendant Swift's compensation system, and other practices and

policies followed by Swift, Plaintiffs and other similarly situated workers were not paid

for all of the time that they worked and they have not been paid for all of the time they have worked for several years.

19.     Plaintiffs and all similarly situated individuals who worked at Defendant Swift's meat processing facility in Nampa, Idaho were deprived of their lawful wages under federal law in the same manner.

20.     Swift's failure to pay Plaintiffs and Class members their lawful wages was willful.  Swift knew or should have known that its conduct was unlawful and/or showed reckless disregard for the matter of whether its above-described conduct was prohibited by law.  Swift did not have written authorization from any Plaintiff worker or other legal justification to withhold, divert or deduct any portion of Plaintiffs' and other workers' wages that are at issue in this Complaint.

21.     Despite its knowledge that time spent by Plaintiffs and Class members, as described above, was compensable time under both state and federal law, Swift has refused to fully compensate workers at the Nampa, Idaho facility for any of this time.

**V.     CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 et seq.**
**All Plaintiffs v. Defendant Swift**

22.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

23.     Pursuant to the Fair Labor Standards Act, specifically 29 U.S.C. § 207, Swift was and is obligated to pay employees at a rate equal to one and one-half times their normal

hourly rate of pay for all time spent performing compensable work in excess of 40 hours per week.

24.     Pursuant to the Fair Labor Standards Act, specifically 29 U.S.C. § 216(b), Swift, because it failed to pay employees the required amount of overtime at the statutory rate, must reimburse the employees not only for the unpaid overtime wages, but also for liquidated damages in an amount equal to the amount of unpaid overtime wages. Plaintiffs assert that the Defendant Swift's refusal to pay for time worked was willful.

25.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), Plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended if they are successful in prosecuting an action for unpaid overtime wages.

        WHEREFORE, Plaintiffs pray for the following relief against Defendant Swift:

        A.  That this Court permit this action to go forward as a representative action pursuant to 28 U.S.C. § 216(b) and approves notice of this action to all other similarly situated workers formerly employed by Swift at its Nampa, Idaho facility.

        B.  That this Court Order an accounting of lost wages for Plaintiffs;

        C.  That this Court award lost overtime wages, liquidated damages, statutory penalties, interest, costs and attorney's fees.

        Respectfully submitted,


        /s/ Bruce Skaug
        BRUCE SKAUG
        IDAHO Bar #:
        Goicochea Law Offices
        1226 East Karcher Road
        Nampa, ID 83686
        Phone:  (208) 466-0030
        Facsimile:  (208) 466-8903

PHILIP A. DOWNEY
Pennsylvania Bar # 81603
P.O. Box 736
Unionville, PA 19375
Phone:  (610) 324-2848
Facsimile:  (610) 347-2507
downeyjustice@gmail.com

BRIAN P. MCCAFFERTY
Pennsylvania Bar # 66257
Kenney Egan McCafferty & Young
3031C Walton Road, Suite 200
Plymouth Meeting, PA 19462
Phone:  (610) 940-9099
Facsimile:  (610) 940-0284
E-mail:  cafstar@aol.com

**Attorneys for Plaintiffs**

DATED:  October 16, 2007